

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 9, 2013

By Hand and ECF

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:  Vincent Basciano v. United States
          Civil Docket No. 12-0280 (NGG)

Dear Judge Garaufis:

    The government respectfully submits this response to petitioner Vincent Basciano's motion to amend his habeas petition to include a Brady claim based on information from Joseph Barone that Basciano believes to be exculpatory. Because Basciano's motion is untimely and his proposed amendment would be futile, his motion should be denied.

FACTUAL BACKGROUND

    As the factual background of Basciano's trial convictions is discussed extensively in the government's July 18, 2013 memorandum ("Gov't. Opp."), which the government incorporates by reference, the government sets forth here facts relevant to Joseph Barone and to Basciano's current motion.

    Basciano's original habeas petition raised two Brady claims, specifically, the government's failure to disclose the substance of certain information from Giuseppe Gambina, which Basciano believes impeaches portions of Cicale's account of the Pizzolo murder conspiracy, and the failure to disclose information about whether Cicale had been advised by the government that he was to be charged with the Santoro murder prior to deciding to cooperate. (Pet. at 34-43, 43-45).

I.  Joseph Barone

Basciano learned of the substance of Joseph Barone's information when the government disclosed to Basciano and his counsel certain materials on January 10, 2011, pursuant to a protective order in his capital case.  This disclosure followed the Court's provision in August 2010 to the parties of a letter Barone had sent to the Court.  After that disclosure, the government reviewed Barone's FBI informant file and gathered any report or note that referenced Basciano or Cicale or Basciano's charges.  These documents were then referred to as "The Barone Materials."

Barone had been a confidential informant reporting to a special agent working at the White Plains Residential Agency of the FBI.  During the course of his reporting, Barone advised his handling agent that Cicale "did the shotgun murder in Throgg's Neck," referring to the Santoro murder, a report that Basciano believes is exculpatory. (Gov't. Opp. 79-80).  Basciano acknowledges that the AUSAs involved in his prosecution were unaware of Barone's information. (Id., citing Supp. Recusal Mot. 64-65, 73, 83).  As the government argued in its memorandum opposing Basciano's habeas petition and recusal motion, Barone's information ultimately would not have demonstrated a reasonable probability of a different result at Basciano's trials given the abundant evidence in support of the crimes of conviction.  Specifically, the government argued,

> Far from being exculpatory, [Barone's] information is largely consistent with Cicale's testimony since Cicale never denied his own involvement in Santoro's murder and has consistently admitted firing at Santoro. Moreover, Barone's information inculpates Basciano since it establishes, consistent with Cicale's testimony and other proof at trial, that Basciano ordered the murder of Santoro because he had learned Santoro had threatened to kidnap one of his sons.  Even assuming Barone's information had been disclosed and used by Basciano, the result at trial would not have been different in light of the "multitude of other evidence presented concerning the actual charges against Basciano that did not hinge on the testimony of Cicale . . . . With respect to the Santoro murder charge, the jury considered Basciano's own recorded statements, the testimony of cooperating witnesses

> Salvatore Vitale, Nicholas Pisciotti, Richard Cantarella, and James Tartaglione, as well as the testimony of Kenneth Champlin and Carmine Naddeo, and physical evidence corroborating the details of the Santoro murder provided by the witnesses." Basciano, 465 Fed. Appx. at [15]. As this Court has noted repeatedly, Basciano has "not dispute[d] the existence of the significant independent and corroborating evidence offered at trial in addition to Cicale's testimony." Basciano, 2008 WL 905867, at *1.

(Gov't. Opp. 80-81).

## ARGUMENT

I. Legal Standard

Pursuant to Fed. R. Civ. P. 15(c), an untimely amendment relates back to the date of the original pleading when "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); see Fama v. Comm'r of Correctional Svcs., 235 F.3d 804, 816 (2d Cir. 2000). It is within the district court's discretion to grant or deny leave to amend. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). A court may deny a motion to amend pursuant to Fed. R. Civ. P. 15 for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Id.

II. Analysis

Basciano's motion to amend his habeas petition to include a claim based on Barone's information and to add further allegations of prosecutorial misconduct based on the rebuttal summation in his 2007 trial in light of Barone's information should be denied.

First, Basciano's motion is untimely as it is brought well after the filing of his original petition on January 17, 2012 and the filing of the government's response to that petition. Moreover, Basciano was aware of the relevant information since January 2011 and there is no good cause for Basciano's delay in incorporating The Barone Materials into his petition. See McCarthy, 482 F.3d at 200 (court may deny motion to amend pursuant to Fed. R. Civ. P. 15 for "good reason, including futility, bad faith, undue delay, or undue

3

prejudice to the opposing party"). Although Basciano claims he learned of the significance of Barone's information only upon reading the government's response to his habeas petition, Basciano has been aware of Barone's information, including the Santoro-related information contained in The Barone Materials, since January 2011 when he and his counsel received The Barone Materials pursuant to a protective order. In addition, Basciano was well aware of Barone's information by the time of his capital trial, which pre-dated the filing of his original habeas petition, since he disagreed with his attorneys' decision not to call Barone as a defense witness. (United States v. Basciano, 05-CR-060(NGG), Trial Tr. 7899-7907). In addition, Basciano has also relied upon The Barone Materials in moving to recuse the Court in this case. (See Basciano v. United States, 12-CV-280(NGG), Docket Entry #14, filed June 14, 2013 at 60-61, 64-65, 73, 83 ("Supplemental Recusal Mot.")). In his recusal motion, Basciano recognized that Barone's information could have been viewed as exculpatory in relation to the Santoro murder. (See, e.g., Supp. Recual Mot. at 74 n.25, 76-79).[1] Thus, Basciano has no excuse for his failure to include a claim or claims based upon Barone's information in his original habeas petition.

Basciano's proposed amendment also should not be deemed to relate back to his original habeas petition because it does not arise out of a "common core of operative facts," Mayle v. Felix, 545 U.S. 644, 664 (2005), since it does not pertain to either of Basciano's specific Brady claims raised in his original petition. See Mandacina v. United States, 328 F.3d 995, 1002-03 (8th Cir. 2002)(affirming denial of motion to amend a petition to add a Brady claim based on the failure to disclose materials that could have impeached a trial witness where the original habeas petition did not raise a Brady claim related to the government's failure to disclose information which could impeach any trial witness even though the original petition raised a general Brady claim; "each alleged withholding of evidence represents a distinct act, such that the original motion does not provide fair notice of Brady claims not specifically asserted").

Second, Basciano's motion to amend should be denied because it is futile. As explained above, Barone's information does not create a reasonable probability of a different result at trial had it been disclosed. For the reasons explained in the government's

---

[1] On June 8, 2013, Basciano also filed a motion seeking an evidentiary hearing regarding Barone's information regarding the Santoro murder. (See Docket Entry #19).

opposition, as well as in the two summary orders rejecting Basciano's previous Brady claims and this Court's prior rulings, there is no reasonable probability of a different result had Barone's information been disclosed, even if considered collectively with Basciano's prior Brady claims. (Gov't. Opp. 80-81; United States v. Basciano, 465 Fed. Appx. 9, 15 (2d Cir. 2012)(summary order); United States v. Basciano, 384 Fed. Appx. 28, 31 (2d Cir. 2010)(summary order); United States v. Basciano, 2008 WL 905867, at *1 (E.D.N.Y. Mar. 31, 2008); United States v. Basciano, 2008 WL 794945, at * 4 (E.D.N.Y. Mar. 24, 2008). There was overwhelming evidence at trial of Basciano's guilt of the Santoro murder from multiple sources, including Basciano's admissions during the December 21, 2003 conversation recorded by James Tartaglione, and those sources were corroborated.

      In seeking to amend his petition, Basciano also appears to be repeating his argument that AUSA John Buretta engaged in prosecutorial misconduct during his rebuttal summation in the 2007 trial. However, this Court has rejected Basciano's prior prosecutorial misconduct claims based on the rebuttal summation – claims which relied upon the same passage that Basciano now quotes. (Compare Mot. at 6 with United States v. Basciano, 03-CR-929, DE# 1125, Mem. Of Law In Support Of Defendant Vincent Basciano's Motion For A New Trial Pursuant to Fed. R. Crim. P. 33 Based Upon Newly Discovered Evidence, at 137-38 (filed Mar. 24, 2010)). Moreover, as a factual matter, Basciano's claim of prosecutorial misconduct rests upon AUSA Buretta's having been aware of Barone's information. But, as Basciano has already noted, his trial prosecutors were not aware of Barone's information. In fact, their lack of knowledge is the basis of one of Basciano's recusal claims. Specifically, in his recusal motion, Basciano has argued that this Court's failure to disclose Barone's letter to the Court prior to July 31, 2010 (the last date upon which Basciano could have filed a Rule 33 motion in the '03 case) prevented the government from complying with its disclosure responsibilities. (See Supp. Recusal Mot. at 83 ("For even while the Court sat idly by in silence without revealing a hint of the letter to anyone, including the Government (lest that alone would trigger their disclosure responsibilities) . . .").[2]

---

[2] Because Barone was a confidential informant at the time Cicale decided to cooperate, Cicale could not have been aware that Barone had told the FBI that Cicale participated in the Santoro murder and murder conspiracy.

Nor does Barone's information about the Santoro murder establish that the Santoro murder was unrelated to the Bonanno family, as Basciano asserts. Similar to the testimony at trial (see TII 307-08 (Vitale), 1061 (Cicale), 3431 (Pisciotti)), Barone confirmed that Basciano had ordered the murder of Santoro because he had learned that Santoro had threatened to kidnap one of Basciano's sons. (GA 1). Barone also confirmed that after the murder, Cicale rose quickly in status and responsibility as a member of Basciano's crew. (GA 1). At trial, Cicale and Nicholas Pisciotti both testified that the Santoro murder was a test for Cicale's membership in the crime family. (TII 1058, 1067, 1085-87, 1109, 1133-35, 1165, 3429-30). Indeed, after the Santoro murder, Cicale was inducted into the crime family and rose quickly within its ranks, as did Basciano.

In addition, the evidence permitted the jury to conclude that Basciano was able to commit the Santoro murder due to his position in the Bonanno crime family and that the murder furthered the Bonanno crime family's interests. By retaliating swiftly against Santoro's threat and disrespect, Basciano delivered a public signal of the Bonanno family's strength and ruthlessness in the face of a threat. See United States v. Simmons, 923 F.2d 934, 952 (2d Cir. 1991); United States v. Irizarry, 341 F.3d 23, 302-03 (2d Cir. 2003). The government presented interceptions of telephone calls between and among Michael Mancuso, then a Bonanno soldier in the same crew as Basciano, and various members and associates of the Genovese family, which showed that after Basciano learned of Santoro's threat through Genovese associates Joseph "Joe Monk" Filippone and Dominick "Donnie" Martino, members of the Bonanno family assisted Basciano in locating Dominick Martino and in gaining the assistance of the Genovese family in, and effectively turning a blind eye to, the murder (See United States v. Basciano, 03-CR-29(NGG), 2006 WL 3780542, at * 7-8 (E.D.N.Y. Dec. 21, 2006)(denying Basciano's Rule 29 motion asserting a lack of relatedness and concluding based on the evidence that "Basciano clearly received invaluable aid from both Bonanno and Genovese crime family members in learning about the kidnapping threat, obtaining permission from the Genovese crime family to commit the murder, and planning and committing the murder"); United States v. Basciano, 03-CR-929(NGG), The Government's Memorandum of Law in Opposition to the Defendants' Post-Trial Motions, DE# 636 at 25 (Oct. 21, 2006)). Basciano also was able to use the resources of the Bonanno family to quickly assemble a hit team of capable shooters, who were all members and associates of the Bonanno family, to assist him in murdering Santoro. (See DE# at 25-26). Indeed, Basciano was subsequently recorded praising Cicale and bragging about having his own hit team, stating,

6

>    Anything that I gotta do personally, I don't feel I have to tell anybody. Okay? If it justifies it and if I went to Tony, for the sake of conversation and say, 'Tony, listen to me. I gotta problem with somebody' and, he has enough faith in me.  And he knows I'm gonna tell the truth.  And I'm not clipping a Friend, and a guy is not related to any Friends and I give you the circumstances, I don't wanna mention anybody's name.  I don't need anybody that anybody's gonna give me.  I got my own guys. I do it myself, it falls on me.

(See GX 205(a)(Transcript of December 21, 2003 conversation) at 28-29, 58-59).

As he did in challenging the sufficiency of the evidence of relatedness of the Santoro murder following the 2006 trial, Basciano again reprises his argument that his personal motivation for killing Santoro precludes a finding that the murder was related to the Bonanno family by arguing that Barone's information shows Cicale participated in the murder as a favor to his friend, Basciano. But that is not the law.  "[U]nder the law of this Circuit, it is not determinative that the defendant committed the crime to further his own agenda, if he indeed was only able to commit crime by virtue of his position within the enterprise."  United States v. Locascio, 6 F.3d 924, 943 (2d Cir. 1993); Irizarry, 341 F.3d at 302-03 (defendant's personal motive in committing the murder not controlling in determining whether the murder related to the affairs of the charged enterprise).  The evidence at trial clearly showed that Basciano was able to commit the murder quickly by virtue of his position in the Bonanno family.

Finally, Basciano's reference to Apprendi v. New Jersey, 530 U.S. 466, 494 n.19 (2000), adds nothing to the analysis of whether Basciano should be permitted to amend his petition since the government has consistently argued that Basciano's various Brady claims would not have created a reasonable probability of a different result at trial even when considering Basciano's conviction of the Santoro murder in light of the abundant evidence inculpating Basciano in that murder that is both independent of, and corroborative of, Cicale's testimony.  (See, e.g., United States v. Basciano, 08-cr-1699, Appellee's Br. 45-54 (2d Cir. 2010); United States v. Basciano, 03-CR-929(NGG), DE# 1141 at 53-61).  The Second Circuit has likewise considered Basciano's Brady claims by reference to the

7

Santoro murder, not just whether he would have been convicted of racketeering in general.  See, e.g., Basciano, 465 Fed. Appx. at 15 ("There was a multitude of other evidence presented concerning the actual charges against Basciano that did not hinge on the testimony of Cicale, through whom evidence of the Pizzolo murder was admitted. With respect to the Santoro murder charge, the jury considered Basciano's own recorded statements, the testimony of cooperating witnesses Salvatore Vitale, Nicholas Pisciotti, Richard Canterella, and James Tartaglione, as well as the testimony of Kenneth Champlin and Carmine Naddeo, and physical evidence corroborating the details of the Santoro murder provided by the witnesses."); Basciano, 384 Fed. Appx. at 31 (distinguishing the Pizzolo murder as an uncharged crime and finding any impeachment of Cicale regarding the Pizzolo murder as cumulative of the many other attacks mounted against Cicale's credibility).

III. Conclusion

For the foregoing reasons, and for the reasons set forth in the Government's Memorandum of July 18, 2013, Basciano's proposed amendment is untimely and futile.  Accordingly, Basciano's motion to amend his habeas petition should be denied.

Respectfully submitted,

LORETTA E. LYNCH
UNITED STATES ATTORNEY

By:     /s
Amy Busa
Assistant U.S. Attorney
(718) 254-6274

cc: Clerk of Court (NGG), by ECF
    Vincent Basciano, by mail